IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>XLEAR, a corporation<br><br>and<br><br>NATHAN JONES, invidually and as an officer of XLEAR, Inc.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:21-cv-640 RJS DBP<br><br>Chief Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

The matter comes before the court on Plaintiff United States' Motion to Compel Defendants to respond to interrogatories regarding their ability to pay a civil penalty. (ECF No. 77.) As discussed herein, the court grants the Motion to Compel.[1]

BACKGROUND

Defendants sell products containing a sugar alcohol xylitol in a variety of over-the-counter saline nasal products. During the COVID-19 pandemic Defendants began advertising their saline spray as a product "capable of preventing and treating COVID-19." Complaint ¶ 2, ECF No. 2. These advertisements claimed Xlear nasal spray offers "up to four hours' of protection, and that '[p]eople should be using Xlear as part of a layered defense to prevent getting COVID-19.'" *Id*.

---

[1] Chief Judge Robert J. Shelby referred this matter to the undersigned in accordance with 28 U.S.C. § 636(b)(1)(A) to hear and determine all nondispositive pretrial matters. (ECF No. 16.)

Following warnings from the FTC to stop this line of advertising, the Government filed the instant matter claiming Defendants' deceptive advertising and misrepresentations violated certain sections of the FTC Act, 15 U.S.C. § 45(a), 15 U.S.C. § 52, and the COVID-19 Consumer Protection Act (COVID-19 Act), Pub. L. No. 116-260, Title XIV, § 1401. The Government alleges Defendants "lacked valid factual or scientific bases" for their advertising claims and such misrepresentations posed a public health and safety risk, especially during the concerns and uncertainty amongst a pandemic.

Plaintiff seeks to compel Defendants to respond to Interrogatories 9-11 (directed to Mr. Jones) and 14-15 (directed to Xlear). These interrogatories seek financial information related to Defendants' ability to pay any civil penalty that may be imposed. Interrogatories 9-11 state:

9. Identify all of Your Family's Assets and Liabilities, itemized by type of Asset or Liability and by dollar value.

10. Identify all sources of Income earned by Your Family, itemized and by dollar value.

11. Identify all transfers of Your Family's Assets exceeding $2,500, including all loans, gifts, and sales of Assets.

(ECF No. 78 Ex. C p. 12.) Interrogatories 14 and 15 provide:

14. Identify, itemized and by dollar value, all of Your Assets; Liabilities; revenues; expenses; and distributions, including distributions to Your shareholders, officers, or members; fees paid to any Person or business organization that provides services to You, whether directly or indirectly; and Compensation for Your shareholders, officers, or members, Your Advisory Team members, and Your five most highly paid employees, independent contractors, or consultants that provide services (such as staffing or labor) to You, whether You paid them directly or indirectly.

15. Identify all payments, including transfers of Assets, exceeding $2,500 made outside the ordinary course of business or to any Family Member of any Principal Shareholder, board member, or officer.

(ECF No. 78 Ex. D p. 13-14.)

Defendants objected to these requests. Mr. Jones objects arguing the interrogatories are overly broad, unduly burdensome, not proportional to the needs of the case, irrelevant, premature as there is no judgment in the case, and designed to harass Mr. Jones and his family. (ECF No. 78 Ex. M p. 10-11.) Defendant Xlear objects on the same grounds as Mr. Jones. (ECF No. 78 Ex. N p. 24-25.) Xlear further asserts it has produced information concerning its revenues and profits from nasal sprays, "which is sufficient to demonstrate Defendants' ability to pay under the FTC Act." (ECF No. 78 Ex. P. p. 1.)

## LEGAL STANDARDS

Under Fed. R. Civ. P. 37 a party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37. The court looks to Federal Rule 26, which governs discovery disputes. Federal Rule of Civil Procedure 26(b)(1) provides that

> the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

F.R.C.P. 26(b)(1).

Discovery at this stage of the litigation is broadly construed. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" will be deemed relevant). And the court must balance proportionality considerations against the "parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." F.R.C.P. 26(b)(1); *see also* Fed.

R. Civ. P. 26(b) advisory committee's note to 2015 amendment (seeking to address the explosion of information that has been exacerbated by e-discovery).

DISCUSSION

The United States argues the information it seeks is relevant because civil penalties are sought and Defendants "ability to pay" is a statutory factor the court considers when determining a civil penalty. Violations of the COVID-19 Act are treated as FTC violations and in determining a civil penalty, "the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." 15 U.S.C. § 45(m)(a)(A), (C).

Defendants oppose this line of reasoning arguing the United States' requests are intended to harass, are premature, improper, and irrelevant. Moreover, the United States fails to cite to any persuasive authority for the relief it seeks. Defendants instead point to the relevant statute arguing their ability to pay should be considered only after liability is established. *See* 15 U.S.C. § 45(m)(1)(C). Defendants also cite to *Fed. Trade Comm'n v. PayDay Fin. LLC*, 989 F.Supp.2d 799, 821 (D.S.D. 2013) and *Untied States Commodity Futures Trading Comm'n v. R2 Cap. Grp. LLC*, 2017 WL 4350366 (D. Colo. Aug. 3, 2017) in support of their arguments. Finally, Defendants maintain that the information provided by Xlear already demonstrates their ability to pay any civil penalty.

The court is not persuaded by Defendants' arguments. First, the plain language of the statute does not require liability be established prior to obtaining discovery regarding the ability to pay. Next, *F.T.C. v. PayDay* held it was premature to decide or assess civil monetary penalties on summary judgment, but it did not address discovery regarding the defendants' ability to pay. Likewise, the *R2 Cap. Grp*. court was not considering a discovery issue, rather it noted a lack of confidence on the record before it to address civil penalties at the summary judgment stage.

Based on the plain language of the statute, the court holds Defendants' ability to pay a civil penalty is relevant, making Defendants' financial information relevant to the claims and defenses here. As noted, "In determining the amount of such a civil penalty, the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." 45 U.S.C. § 45(m)(1)(C). In addition, the statue provides for possible penalties for "each day of continuance" when failing to comply. Thus, Defendants' assertion that this is a relatively minor matter of only 10 alleged violations is not a basis to withhold financial documents. The ability to pay pertains to both Defendants and the fact that Xlear has already provided some information does not absolve either Defendant from further complying with Plaintiff's discovery requests. Defendants' financial ability to pay a fine impacts the amount of penalty imposed and there is nothing preventing the discovery from being provided at this time in the case, and the proportionality considerations weigh in favor of the discovery too. Finally, the court finds the reasoning in *United States v. Nepute*, No. 4:21CV437 RLW, 2022 WL 17141108 (E.D. Mo. Nov. 22, 2022), which Plaintiff provides as supplemental authority, persuasive in the instant case. In that case, the court considered the production of financial information in assessing the ability to pay a civil fine for alleged violations of the FTC and COVID-19 Acts. And the court rejected the defendants' arguments that are nearly identical to those raised here.

ORDER

It is therefore ORDERED that the United States' Motion to Compel Defendants to respond to Interrogatories is GRANTED. Defendants shall respond to the Interrogatories within thirty (30) days from the date of this order.

DATED this 30 January 2023.

_____
Dustin B. Pead
United States Magistrate Judge