IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| USA,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br>Xlear Inc., et al.,<br><br>　　　　　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:21-cv-640 RJS DBP<br><br>Chief Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

　　　Defendants sell various products that contain xylitol, a sugar alcohol, in a variety of over-the-counter saline nasal spray products. During the COVID-19 pandemic Defendants began advertising their saline spray as "capable of preventing and treating COVID-19."[1] These advertisements claimed Xlear nasal spray offers "up to four hours' of protection, and that '[p]eople should be using Xlear as part of a layered defense to prevent getting COVID-19.'"[2] The FTC warned Defendants to stop this line of advertising and eventually filed the instant matter claiming Defendants' deceptive advertising and misrepresentations violated certain sections of the FTC Act, 15 U.S.C. § 45(a), 15 U.S.C. § 52, and the COVID-19 Consumer Protection Act (COVID-19 Act), Pub. L. No. 116-260, Title XIV, § 1401.[3]

　　　In the instant motion, Plaintiff moves to compel Defendant Xlear to produce a 30(b)(6) witness to testify on certain topics.[4] Plaintiff argues Defendant is inappropriately limiting the testimony it seeks. Specifically, Plaintiff moves to compel on Topics 3-6, 8, 9, 11, and 16.

---

[1] Complaint ¶2, ECF No. 2.

[2] *Id.*

[3] Chief Judge Robert Shelby referred this matter to the undersigned in accordance with 28 U.S.C. § 636(b)(1)(A) to hear and determine all nondispostive pretrial matters. (ECF No. 16.)

[4] ECF No. 114.

Having considered the parties' memoranda and relevant case law, the court enters the following order.

## LEGAL STANDARDS

Federal Rule of Civil Procedure Rule 45 governs the form and issuance of subpoenas. It operates within the confines of Rule 26.[5] The court measures subpoenas against the backdrop of Federal Rule of Civil Procedure 26, which governs discovery disputes. Federal Rule of Civil Procedure 26(b)(1) provides that

> the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[6]

Discovery at this stage of the litigation is broadly construed.[7] And the court must balance proportionality considerations against the "parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[8]

---

[5] *See US Magnesium, LLC v. ATI Titanium LLC*, 2020 WL 12847147, at *5 (D. Utah May 22, 2020) (applying relevancy considerations to subpoena); *Frappied v. Affinity Gaming Black Hawk, LLC* 2018 WL 1899369 *3 (D. Colorado April 20, 2018) ("a subpoena is bound by the same standards that govern discovery between the parties, and, to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case"); *Rice v. United States*, 164 F.R.D. 556, 557 (N.D. Okla. 1995) (finding Rule 45 subpoenas constitute discovery).

[6] F.R.C.P. 26(b)(1).

[7] *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" will be deemed relevant).

[8] F.R.C.P. 26(b)(1); *see also* Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment (seeking to address the explosion of information that has been exacerbated by e-discovery).

## DISCUSSION

I.    **Topics 3-6 and 8**

Plaintiff avers these topics "concern Xlear's COVID-19 related 'Advertisements and statements,' which are the core of this case."[9] Plaintiff seeks:

> 3. The identities and roles of any third parties (e.g., vendors, contractors, influencers, affiliates, promoters, publishers, industry peers, related parties, Healthcare Professionals, or other agents) used to create or distribute any of Xlear's Advertisements or statements relating to COVID-19 or SARS-CoV-2.
>
> 4. Xlear's Advertisements or statements that relate to SARS-CoV-2 or COVID-19, including: (i) the date(s) and location(s) that such Advertisements or statements were published; (ii) the individuals involved in creating, verifying, and approving the content, and disseminating Your advertisements or statements; (iii) the cost, contents, of and claims in the Advertisements or statements; (iv) any modifications made or disclaimers added to those Advertisements or statements; and (v) any analysis of the success or performance of the Advertisements or statements.
>
> 5. Your substantiation—and the time you acquired such substantiation—for each of Xlear's Advertisements or statements regarding Xlear and COVID-19, including any claims relating to the ability of Xlear nasal spray products or the ingredients therein to protect against, prevent, treat, cure, mitigate, reduce the likelihood of catching, reduce the severity of, or reduce the risk of dying from COVID-19. This includes but is not limited to the results, findings, and limitations of the substantiation materials; Defendants' involvement in the funding, creation, or contents of those materials; Defendants' assessments of those materials; and Defendants' statements or communications about those materials.
>
> 6. Xlear's relationships with the authors or creators of the substantiation materials for Xlear's Advertisements or statements regarding Xlear and COVID-19.
>
> 8. The nature and content of discussions between any third parties (including Healthcare Professionals) and Xlear or any of its officers, directors, employees, or agents regarding (a) Xlear's Advertisements or other statements relating to COVID-19 or (b) Studies and other materials relied upon by Xlear for such Advertisements or statements.[10]

---

[9] Mtn. p. 2.

[10] Notice of Deposition p. 3-4, ECF No. 114-2.

Xlear seeks to limit its testimony to statements Plaintiff has already identified as deceptive. Moreover, Xlear claims, the definition of "Advertisements" is unduly burdensome and unproportional to the needs in this case, because preparing someone to address not only conventional advisements, but also any "written or verbal statement … designed to increase consumer interest" is unworkable.[11]

At the heart of this case are Xlear's advertisements regarding its products, their effectiveness in preventing and treating COVID-19, and whether such advertising was deceptive. Although Plaintiff's definition of advertisements is admittedly broad, the undersigned finds it is proportional to the needs of this case given its focus. Preparing a witness on the above-mentioned topics will present a challenge, yet it is not unworkable as Xlear suggests. And there is the distinct possibility that such a witness may offer testimony that helps refute Plaintiff's allegations of deception, thus limiting Xlear's liability. In the court's view, Xlear stands to benefit from absolving itself of any alleged deceptive advertising, and artificially limiting it as Xlear suggests, will undermine its alleged innocence. The court will allow questioning on these topics.

## II.     Topic 9

Topic 9 focuses on communications between Defendant and customers, consumers, and the public. It states:

---

[11] Plaintiff's 30(b)(6) notice incorporates the definition of "advertisement" used in Plaintiff's First Set of Interrogatories. It provides:

> The term "Advertisement" means any written or verbal statement, illustration, image, video, or depiction—including, but not limited to, packaging and labeling, promotional materials, press releases, email marketing, printed materials, television, radio, and Internet, social media, and other digital content—that promotes the sale of a good or service, is designed to increase consumer interest in a brand, good, or service, or has the tendency or capacity to induce the sale of a product.

(ECF No. 78 p. 8).

9. Xlear's communications with consumers, customers, or other members of the public relating to COVID-19 or SARS-CoV-2, including but not limited to any complaints and testimonials.[12]

Xlear seeks to "produce a witness to testify regarding complaints and testimonials from consumers and customers relating to COVID-19 or SARSCoV-2."[13] Xlear argues the definition of "communications" encompassing "documents of any kind", with no limits, is unworkable in preparing a witness. To this end, Xlear requests that Plaintiff identify "particular communications with particular members of the public" as part of the desired testimony to create an appropriate limit. This limitation, according to Plaintiff, is improper as the case focuses on how consumers interpreted Xlear's COVID-19 claims, and testimony should not be confined to its identification of particular communications with particular members of the public.

The court finds this topic relevant and proportional to the needs and issues in this case. Yet, there is a limit that should be drawn around it to encompass communications to the relevant time frame in this case. The court is not persuaded by Xlear's supposed troubling definition of communications because those communications, or documents, that sought to market its nasal spray as a countermeasure to COVID-19 are part of the alleged violations here. Thus, the court grants Plaintiff's request to allow this topic with the one reservation, Plaintiff is to limit the sought after communications to the relevant time frame alleged in the case.

### III. Topic 11

Topic 11 seeks testimony regarding:

> Xlear's knowledge and understanding of the Federal Trade Commission Act and COVID-19 Consumer Protection Act, including but not limited to when and under what circumstances Xlear became aware of these laws, and its knowledge and

---

[12] Notice of Deposition p. 4, ECF No. 114-2.

[13] ECF No. 114-3 p. 12.

understanding of whether its COVID-19-related Advertisements and statements violated these laws.[14]

Xlear resists this line of questioning, arguing that asking a party "to explain its position on compliance with federal statute and regulation, … by its very nature concerns legal reasoning."[15] And such legal reasoning would be protected by the attorney-client privilege and work product doctrine. The court is not persuaded that this line of questioning falls within the attorney-client privilege or work product doctrine. As noted by Plaintiff, a court in this circuit distinguished the line of cases limiting these types of questions in finding that the party did not seek the "mental impressions of [the other party's] counsel or experts."[16] This reasoning is persuasive here. Xlear need not designate its counsel or experts as a 30(b)(6) witness. More importantly, the court agrees that "actual knowledge or knowledge fairly implied on the basis of objective circumstances" must be shown by Plaintiff to obtain civil penalties.[17] This topic directly relates to Xlear's knowledge or implied knowledge, which will impact the availability of civil penalties. Moreover, even in *Arthex, Inc. V. Parcus Med*,[18] that is relied on by Xlear, the court noted an allowance in some cases for these types of questions "with the proviso that counsel can interpose objections …."[19] Xlear may interpose an objection if it chooses, but the witness is to provide an answer. Thus, the motion is granted as to this topic.

---

[14] Notice of Deposition p. 5, ECF No. 114-2.

[15] *Arthrex, Inc. v. Parcus Med*., LLC, No. 211CV694FTM29UAM, 2013 WL 12155461, at *2 (M.D. Fla. Nov. 18, 2013).

[16] *Ecrix Corp. v. Exabyte Corp.*, 95 F. Supp. 2d 1155, 1158, 2000 WL 575390 (D. Colo. 2000).

[17] *See* 15 U.S.C. § 45(m)(1)(A) (requiring "actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited"); 15 U.S.C. § 57a(a)(1)(B) (allowing for rules which "define with specificity acts or practices which are unfair or deceptive acts or practices in or affecting commerce").

[18] 2013 WL 12155461.

[19] *Id.*

## IV.     Topic 16

Topic 16 is related to Topic 11 in that it seeks "The factual basis for each of Xlear's affirmative defenses."[20] Xlear argues preparing a witness on "all its factual proof related to its defenses is inefficient and burdensome" and therefore, should be rejected as overbroad and disproportionate. Xlear again relies on *Arthex, Inc.* claiming this topic also seeks legal reasoning. As noted in the case relied on by Plaintiff, Xlear "may have a valid point if Plaintiff were asking for a corporate representative to testify extensively about the legal theories or elements of its counterclaim or defenses."[21] Plaintiff should not seek a 30(b)(6) representative to testify about his or her view of the legal "materiality" of the underlying facts. Assuming the inquiry into the underlying facts is not "merely a pretense for asking lay witnesses to espouse on [Xlear's] legal theories,"[22] then the facts underlying a party's claims and defenses are at the heart of discovery as "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[23] And, are discoverable via discovery devices such as a deposition. The court cautions Plaintiff to not seek the legal materiality of the underlying facts and if this is done, then counsel for Xlear may enter an objection. The court will allow this line of questioning presuming the good faith of the parties.

**ORDER**

Based upon the foregoing, the court:

GRANTS Plaintiff's motion as set forth above.

IT IS SO ORDERED.

---

[20] Notice of Deposition p. 5, ECF No. 114-2.

[21] *Shahbabian v. TriHealth, Inc*., No. 1:18-CV-790, 2020 WL 419443, at *6 (S.D. Ohio Jan. 27, 2020).

[22] *Id.*

[23] Fed. R. Civ. P. 26(b)(1).

DATED this 16 January 2024.

_____
Dustin B. Pead
United States Magistrate Judge